UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>MARTA JULIA LORENZANA-CORDON, )<br>also known as "Julie," "Yulie," )<br>"Julia," and "Morena," )<br>)<br>Defendant. ) | CRIMINAL NO.: 20-CR-133 (CKK) |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States, by and through the undersigned attorneys, respectfully moves to detain the Defendant, Marta Julia Lorenzana-Cordon (the "Defendant"), pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is alleged to have been a member of a large-scale Guatemalan-based narcotics trafficking organization ("DTO") responsible for transporting multi-ton quantities of cocaine from Colombia, through Central America and Mexico, into the United States for subsequent distribution.

Beginning in or around 2008, and continuing thereafter, up to and including 2019, the Defendant was responsible for coordinating the logistics of receiving and distributing shipments of cocaine coming to Guatemala from South American sources of supply which were ultimately imported to the United States. The Defendant was extradited from Guatemala to face drug trafficking charges in this District. As discussed below, the Defendant is charged with a drug trafficking offense that carries a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. She faces significant jail time, including a mandatory minimum sentence of ten years; maintains substantial foreign contacts; has no immigration status or community ties in the United States; is

subject to an immigration detainer; and has demonstrated the ability to facilitate transactions involving large amounts of cash. Accordingly, the Defendant poses a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

## FACTUAL BACKGROUND

On July 23, 2020, a federal grand jury returned an Indictment ("Indictment") charging the Defendant with conspiracy to distribute five kilograms or more of cocaine knowing, intending, and having reasonable cause to believe that it would be imported into the United States in violation of 21 U.S.C. §§ 959(a), 960, and 963. The indictment also carries a criminal forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970.

The Government expects the Defendant to appear before either this Honorable Court or the Magistrate Court on December 13, 2021, for her initial appearance and detention hearing. The Government proffers the following facts in support of its motion for an order of detention pending trial:[1]

The Indictment in this case is the product of an ongoing investigation conducted by the Drug Enforcement Administration ("DEA"). The Government anticipates that the evidence at trial will show that the Defendant is a leader within the Lorenzana family drug trafficking organization based in Guatemala. The Lorenzana organization, a group comprised primarily of family members, has long been considered to be one of the largest and most influential drug cartels in Guatemala. The organization transports tonnage quantities of cocaine from Colombia into Guatemala, where the cocaine is inventoried and stored on properties owned by the

---

[1] See United States v. Smith, 79 F.3d 1208, 1210 (D.D.C. 1996).

organization throughout Guatemala. Once processed, the organization works with the Sinaloa Cartel, among other organizations, to traffic cocaine into Mexico, through Central America, and, eventually, into the United States. To ensure the organization's success and dominance in Guatemala, the Lorenzana drug trafficking organization relied on acts of public corruption and violence.

Between 2008 through, and including, 2019, the Defendant, on behalf of the organization, coordinated the transportation, storage, and distribution of tonnage quantities of cocaine from Colombia, through to Central America and Mexico, for eventual distribution into the United States.

The Government's evidence at trial would include testimony from cooperating witnesses with direct communications with the Defendant discussing drug trafficking related activities; drug ledgers, authored and maintained by a cooperating witness, that reference the Defendant's role within the DTO; and BlackBerry Messenger ("BBM") electronic communications intercepted as part of a Title III investigation.

On February 3, 2021, the Government submitted a formal extradition request to Guatemalan authorities and Guatemalan authorities which subsequently resulted in an issuance of a provisional arrest warrant ("PAW") on February 9, 2021. Guatemalan authorities arrested the Defendant on April 30, 2021. The Defendant has been in continuous custody in Guatemala since her arrest and was formally extradited to the United States on December 10, 2021.

The Defendant is a citizen of Guatemala. She has no legal status in the United States and has been paroled into this country by virtue of her extradition to the United States from Guatemala and solely for the purpose of facing prosecution on the identified charges. Immigration and Customs Enforcement issued a detainer and would take the Defendant into

custody should she be released pending trial. The United States is not aware that the Defendant has any contacts in the United States, nor, in this District, other than any co-conspirators related to this indictment.

## ARGUMENT

**A.     The Bail Reform Act**

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pretrial detention upon determining that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. E.g., United States v. Fernandez Velez, 608 F. Supp. 2d 93, 94 (D.D.C. 2009).

A finding of dangerousness must be supported by clear and convincing evidence. E.g., United States v. Simpkins, 826 F.2d 94, 98 (D.C. Cir. 1987); Fernandez Velez, 608 F. Supp.2 d at 94. A finding of risk of flight must be supported by a preponderance of the evidence. E.g., Simpkins 826 F.2d at 96; Fernandez Velez, 608 F. Supp. 2d at 94.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Title 18, United States Code, Section 3142(g).

**B.**   **Factors Supporting Detention**

  1.   Presumption of Dangerousness and Risk of Flight

In a case where the defendant is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substance Act," a court must presume, "[s]ubject to rebuttal by the [defendant]," that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community," if the court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). An indictment charging a qualifying offense is sufficient to establish the probable cause necessary to trigger this rebuttable presumption. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996); United States v. Addison, 217 F. Supp. 3d 69, 73 (D.D.C. 2016); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986).

A presumption of detention applies in this case. Specifically, a federal grand jury returned an indictment charging the Defendant with conspiracy to distribute five kilograms or more of cocaine knowing, intending, and having reasonable cause to believe that it would be imported into the United States in violation of 21 U.S.C. §§ 959(a), 960, and 963, subjecting her to a mandatory minimum sentence of ten years. Accordingly, there is a presumption that the

Defendant should be detained as both a risk of flight and a danger to the community.  See 18 U.S.C. § 3142(e)(3)(A).

When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).  In particular, to rebut this presumption, the Defendant must show that "the specific nature of the crimes charged or . . . something about their individual circumstances" establishes that he is not a danger or likely to flee.  United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996).  Moreover, any attempt by the Defendant to defeat the presumption does not eliminate the presumption entirely; rather, the presumption remains as one factor to be weighed along with other evidence relevant to the four factors listed in § 3142(g).  See Legille v. Dann, 544 F.2d 1, 6 (D.C. Cir. 1976); Addison, 217 F. Supp. 3d at 74; United States v. Ali, 793 F. Supp. 2d 386, 388 (D.D.C. 2011).

For the reasons discussed below, the Defendant will be unable to satisfy her burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.  The Defendant should therefore be detained pending trial.

    2.       Nature and Circumstances of the Offense

The first factor identified by the Bail Reform Act is the nature and circumstances of the offense, including whether the charges involve controlled substances.  18 U.S.C. § 3142(g).  For the first factor to weigh in favor pretrial detention, the government need only establish probable cause to believe that a defendant engaged in a drug trafficking offense.  See, e.g., United States v. Garcia, 312 F. Supp. 3d 36, 42 (D.D.C. 2018).  The possibility of a severe sentence is also an

important factor in assessing the gravity of an offense and a defendant's resulting incentive to flee. See, e.g., United States v. Hong Vo, 978 F. Supp. 2d 41, 43 (D.D.C. 2013).

The first factor weighs in favor of pretrial detention in this case because the Defendant's charge involves international trafficking of a controlled substance. Specifically, the Defendant is charged with conspiracy to distribute five kilograms or more of cocaine knowing, intending, and having reasonable cause to believe that it would be imported into the United States. In addition, the Defendant played an integral, leadership role in the conspiracy, by coordinating the logistics of receiving and distributing tonnage quantities of cocaine from Colombia, through Central American and Mexico, for eventual import and distribution in the United States. The combined value of these transactions, not including potential transportation fees, would be hundreds of millions of dollars. For such major drug traffickers, even a large bond may be just a cost of doing business. See Battle, 59 F. Supp. 2d at 19; see also Garcia, 312 F. Supp. 3d at 42 (holding that conspiracy to import as little as 962 grams of cocaine from a foreign country weighed in favor of pretrial detention). Hence, the nature and circumstances of the offense weigh heavily in favor of pretrial detention.

The possibility of a severe sentence is also an important factor in assessing the gravity of an offense and a defendant's resulting incentive to flee. See Hong Vo, 978 F. Supp. 2d at 43 (holding the nature and circumstances of the offenses strongly favored detention because the severity of a potential sentence created a substantial incentive to flee); see also Ali, 793 F. Supp. 2d at 392. In United States v. Anderson, 384 F. Supp. 2d 32, 36 (D.D.C. 2005), the court held that facing a penalty of 23 years in prison if convicted created a "considerable incentive" to unlawfully evade prosecution. Here, the Defendant faces a minimum sentence of ten years if convicted and an estimated advisory Guidelines range of life, or more than 30 years. See 18

U.S.C. § 960; U.S. Sent'g Guidelines Manual § 2D1.1.  Moreover, the Defendant's siblings, Eliu Elixander Lorenzana-Cordon and Waldemar Lorenzana-Cordon, were convicted on international narcotics trafficking charges in the District of Columbia in March 2019; and her father, Waldemar Lorenzana-Lima, Sr., pled guilty to international narcotics trafficking charges in the District of Columbia in August 2014. Eliu and Waldemar Lorenzana-Cordon received life sentences. Waldemar Lorenzana-Lima received a 23-year sentence. Accordingly, the nature and circumstances of the offense—including the severity of a potential sentence—weigh heavily in favor of pretrial detention.

    3.      Weight of the Evidence

Where the evidence of guilt is strong, it provides an additional incentive to flee.  See, e.g., Addison, 217 F. Supp. 3d at 75 (finding the weight of evidence to favor detention when interactions of defendant with confidential informants were recorded or observed); United States v. Vergara, 612 F. Supp. 2d 36, 37 (D.D.C. 2009) (finding the weight of evidence to be strong based on recorded phone calls of the defendant discussing a conspiracy).

The Government's evidence at trial is overwhelming and will consist, primarily, of, testimony from cooperating witnesses with direct communications with the Defendant discussing drug trafficking and drug-trafficking related activities, drug ledgers, authored and maintained by a cooperating witness, that reference the Defendant's role within the DTO and, BlackBerry Messenger ("BBM") electronic communications intercepted as part of a Title III investigation. Given the strength of the evidence against the Defendant and the sizeable penalty she faces upon conviction, the Defendant has a powerful incentive to flee.

4.History and Characteristics of the Defendant

The prior history and characteristics of the Defendant establishes an inherent risk of flight and inability to comply with any conditions of release the court would impose. Specifically, the Defendant has no known family or community ties with the United States, has the motive and means to flee the country, is subject to an immigration detainer, and as a drug trafficker poses a special risk of flight to avoid prosecution.

First, the history and characteristics of the Defendant favor detention because she has no family or community ties in the United States and possesses both the motive and means to flee the country. In United States v. Anderson, 384 F. Supp. 2d 32, 36 (D.D.C. 2005), the court held that the defendant's history and characteristics favored pretrial detention when he lacked ties to the District of Columbia, possessed the ability to live comfortably abroad, and had access to foreign contacts. See also Hong Vo, 978 F. Supp. 2d at 43 (finding that foreign contacts and experience living abroad supported pretrial detention).

Here, the Defendant is a citizen of Guatemala and has conducted extensive drug trafficking activity in Guatemala. The Government is not aware that she has any contacts in the United States, other than possibly knowing individuals allegedly involved in the drug trafficking conspiracy. She has no known assets, no employment, and no property here—she is here solely for the purpose of federal prosecution. Moreover, the Defendant's role in the conspiracy involved, in part, coordinating the transportation of tonnage quantities of cocaine, through Central America and Mexico, for eventual importation in the United States. As such, the Defendant has already demonstrated a unique ability to use established contacts to unlawfully move amongst foreign countries without detection. Accordingly, the Defendant's lack of local ties and access to a broad network of foreign contacts ensures that she is a significant flight risk.

Second, as discussed above, the Defendant is a Guatemalan citizen and has no immigration status in the United States. She was paroled into the country solely for purposes of prosecution and is therefore subject to an immigration detainer. See United States v. Vasquez-Benitez, 919 F.3d 546, 553 (holding that the Bail Reform Act is not the exclusive means of detaining a defendant). If released on bond, the Defendant is likely to be placed in immigration custody pending removal from the country—a consequence that weighs in favor of pretrial detention. See United States v. Bikundi, 73 F. Supp. 3d 51, 58 (D.D.C. 2014) (holding that potential confinement at an ICE facility combined with strong overseas ties "militate[s] strongly in favor of detention on grounds that the defendant presents a flight risk").

Finally, federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." Alatishe, 768 F.2d at 369 n.13 (citing S. Rep. No. 98-225, at 20 (1983)). Congress has therefore determined that defendants who commit such crimes pose a special flight risk and special risk of danger to the community. See id.; United States v. Bess, 678 F. Supp 929, 934 (D.D.C. 1988).

Congress's determination is particularly evident in the type of transnational crime which the Defendant has conspired to engage in, spanning multiple countries and having the potential to generate hundreds of millions of dollars. Further, the Defendant has demonstrated the skills and means necessary to receive large sums of money through her contacts in the United States. Her group is alleged to transport, store, and distribute tonnage quantities of cocaine. Even a substantial bond would merely be a cost of doing business for the Defendant. Thus, the history

and characteristics of the Defendant display her means, motive, and opportunity to flee the country; she should therefore be detained without bail.

5. <u>Danger to the Community</u>

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C.C.A.N. 1, 23); *accord United States v. Creekmore*, No. CR97-624-M, 1997 WL 732435 (D.D.C. Sep. 25, 1997). In order to detain a defendant based on dangerousness to the community, "a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence … But it must be clearly identified." *Munchel*, 991 F.3d at 1283. "Whether the defendant poses a threat of dealing drugs, for instance, may depend on the defendant's past experience dealing … and her means of continuing to so in the future." *Id.*

Here, the Defendant was a leader in one of the most powerful drug trafficking organizations in Guatemala, which transports and distributes large quantities of cocaine, a dangerous and addictive controlled substance, through Central American and Mexico, for eventual import and sale in the United States. The organization used violence to maintain and grow its power in the drug trafficking community, and the government has evidence personally implicating the Defendant in acts of violence, including murder. Additionally, other alleged members of the conspiracy remain fugitives. Thus, due to the significant quantity of narcotics the Defendant was responsible for trafficking, her use of violence, and the resources available to continue her business, there is a significant likelihood that the Defendant would pose a

significant risk to the safety of the community, both here in the United States and abroad, if released on bail.

## **CONCLUSION**

For the foregoing reasons, the Government has proven by a preponderance of evidence that no condition or combination of conditions would reasonably assure the appearance of the Defendant as required. Given the nature and the circumstances of the crime charged, to which a presumption of detention is attached, and the specific history and characteristics of the defendant, detention is warranted. Second, the Defendant's dangerousness, to which a presumption of detention is also attached, is evidenced through her use of violence and the substantial resources available to continue her business. Thus, the Government has shown by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community. The Defendant should therefore be detained without bail pending trial.

//
//
//
//
//
//
//
//
//

**WHEREFORE**, for the foregoing reasons, the Government submits that the Defendant should be detained pending trial.

Respectfully submitted this 13th day of December, 2021.

                                              ARTHUR G. WYATT, Chief
                                              Narcotic and Dangerous Drug Section
                                              Criminal Division
                                              United States Department of Justice

By:        /s/
                                              Teresita Mutton
                                              Imani Hutty
                                              Trial Attorneys
                                              United States Department of Justice
                                              Narcotic and Dangerous Drug Section
                                              145 N Street, Northeast,
                                              East Wing, Second Floor
                                              Washington, D.C. 20530
                                              (202) 514-0917
                                              Teresita.Mutton@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Government's Motion for Pretrial Detention was filed on the 13th of December 2021. At this time, there is no defense counsel of record that has filed a notice of appearance. However, the Government will ensure a copy is promptly served on subsequently assigned counsel.

                                          ARTHUR G. WYATT, Chief
                                          Narcotic and Dangerous Drug Section
                                          Criminal Division
                                          United States Department of Justice

By:          /s/_____
                                          Teresita Mutton
                                          Imani Hutty
                                          Trial Attorneys
                                          United States Department of Justice
                                          Narcotic and Dangerous Drug Section
                                          145 N Street, Northeast,
                                          East Wing, Second Floor
                                          Washington, D.C. 20530
                                          (202) 514-0917
                                          Teresita.Mutton@usdoj.gov