# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 20-CR-133 (CKK)** |
| **MARTA JULIA LORENZANA-CORDON,** **also known as "Julie," "Yulie," "Julia," and "Morena,"** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorneys, Imani D. Hutty and Douglas Meisel, of the United States Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section ("Government"), respectfully submits this sentencing memorandum in connection with the above-captioned matter.  For the reasons set forth herein, the Government requests that this Court sentence Marta Julia Lorenzana-Cordon, also known as "Julie," "Yulie," "Julia," and "Morena," ("Defendant") to 420 months' imprisonment and a monetary judgment of $27 million. The Government's recommendation is consistent with the sentencing range proposed by the Government and Defendant, through her attorney Camille Wagner, Esq.  ECF No. 71. at 4.

### I.    FACTUAL BACKGROUND

The following facts were stipulated by the parties in the Joint Supplemental Statement of Facts.  ECF No. 71-2.

The Defendant was part of a conspiracy in the country of Guatemala and elsewhere, beginning in or around 2008 and continuing to 2019.  *Id.* ¶ 2(a).

The Defendant coordinated and directed the transportation of cocaine shipments via vehicles to properties owned and/or utilized by her and/or her drug trafficking organization ("DTO") in Guatemala and elsewhere.  *Id.* ¶ 2(b).  Then, the Defendant's DTO received,

processed, and distributed cocaine shipments, both directly and with the assistance of her subordinates, members of her DTO, and co-conspirators. *Id.* ¶ 2(c). The DTO collected tens of millions of U.S. dollars in drug proceeds and distributed portions of those proceeds to co-conspirators. *Id.* ¶ 2(d).

Violence was an integral part of the conspiracy, and the Defendant directly participated in violent acts, including but not limited to, ordering murders, in furtherance of the Defendant's and her DTO's drug-trafficking activities. *Id.* ¶ 6. In conjunction with these violent acts, the Defendant used and/or brandished firearms, as well as possessed these firearms in furtherance of her drug trafficking acts, while other individuals, under her control within her DTO, did the same. *Id.*

The Defendant admitted that the total amount of cocaine involved in this conspiracy that is directly attributable to her was well over four hundred and fifty (450) kilograms, totaling in excess of 27 tons of cocaine over the charged time period. *Id.* ¶ 7. The Defendant acknowledged that over the charged time period, she earned between $1,000 to $2,000 per kilogram of cocaine that she sold to co-conspirators. *Id.* Throughout the course of the conspiracy, the Defendant received U.S. currency in gross profit as a result of her drug trafficking activities, which constituted her primary means of livelihood during the above-charged time period. *Id.* ¶ 8. Based on the Defendant's own admission, she netted more than 27 million dollars in profits from her drug trafficking enterprise.[1] The Defendant admitted that she was aware that the majority of the cocaine was going to be illegally imported into the United States for further distribution. *Id.* ¶ 9.

---

[1] There are 1000 kilograms of cocaine per metric ton. Twenty-seven metric tons are equivalent to 27,000 kilograms. Based on the Defendant's admission of netting at least $1,000 per kilogram multiplied by 27,000 kilograms, the Defendant's total profit was approximately 27 million dollars.

## II.    PROCEDURAL HISTORY

On July 23, 2020, a federal grand jury sitting in the District of Columbia returned an indictment charging the Defendant with conspiring to manufacture and distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963 (Count One).  The Indictment also includes a forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970, which is applicable to Count One.

On February 3, 2021, the Government submitted a formal extradition request to Guatemalan authorities, which subsequently resulted in the issuance of a provisional arrest warrant on February 9, 2021.  Guatemalan authorities arrested the Defendant on April 30, 2021. The Defendant was in continuous custody in Guatemala following her arrest and was formally extradited to the United States on December 10, 2021.

On May 2, 2023, without a plea agreement, the Defendant pleaded guilty to Count One of the Indictment.  The Court scheduled a hearing for January 8, 2024, to hear evidence concerning the contested sentencing enhancements.  On December 5, 2023, the Defendant submitted an unopposed motion to convert the contested sentencing hearing to a status hearing and vacate associated deadlines, based on the status of ongoing negotiations between the parties and in anticipation of the Joint Motion of Supplemental Colloquy and Joint Sentencing Recommendation and a Supplemental Statement of Stipulated Facts.

On December 5, 2023, by Minute Order, the Court granted the Defendant's motion, and ordered a status hearing to be held on January 8, 2024, at 10:00 a.m.  *See* Min. Order, Dec. 5, 2023.  On December 29, 2023, the parties submitted a Joint Motion of Supplemental Colloquy and Joint Sentencing Recommendation and a Supplemental Statement of Stipulated Facts.  ECF

3

No. 71 and 71-2.  On January 8, 2024, the Defendant allocuted to the Joint Supplemental Statement of Stipulated Facts, and the Court ordered that a final Presentence Investigation Report ("PSR") be filed by February 23, 2024, and the parties' sentencing memoranda be filed by March 1, 2024.  *See* Min. Entry, Jan. 8, 2024.

### III.   STATUTORY PENALTIES

Defendant now faces sentencing on the charge of conspiracy to manufacture and distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963.

As noted in the Joint Motion of Supplemental Colloquy and Joint Sentencing Recommendation, the Defendant faces a Guidelines range sentence of life imprisonment.  ECF No. 71 at 4.

### IV.   THE SENTENCING GUIDELINES ANALYSIS AND JOINT SENTENCING RECOMMENDATION

The Sentencing Guidelines are advisory, not mandatory.  *United States v. Booker*, 543 U.S. 220, 258-60 (2005).   However, the Supreme Court held in *Booker* that sentencing courts must consider the Guidelines in formulating an appropriate sentence.  *Id.*   The Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  *United States v. Gall*, 552 U.S. 38, 49 (2007).   "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence.  *Id*. at 49.  The Sentencing Guidelines are "the product of careful study

based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*.

Based on the Joint Motion for Supplemental Colloquy and Joint Sentencing Recommendation and signed Joint Supplemental Statement of Stipulated Facts, the Defendant agreed that she is responsible for the importation and distribution of 450 kilograms or more of cocaine; pursuant to § 2D1.1(c)(1) of the Sentencing Guidelines, the base offense level without enhancements and adjustments for this crime, to which the Defendant has pleaded guilty, is **38**. ECF No. 71 ¶ 8(a). The Defendant acknowledged that she possessed a firearm, warranting a **two-level** enhancement pursuant to § 2D1.1(b)(1). *Id.* ¶ 8(b). The Defendant admitted that she used violence, made a credible threat to use violence, or directed the use of violence, in line with § 2D1.1(b)(2), further increasing her base offense level by **two levels**. *Id.* ¶ 8(c). She also agreed that she unlawfully imported or exported the cocaine using an aircraft other than a regularly scheduled commercial air carrier, leading to another **two-level** enhancement pursuant to § 2D1.1(b)(3). *Id.* ¶ 8(d). The Defendant admitted she was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, and therefore, her base offense level is increased by **four levels** pursuant to § 3B1.1. *Id.* ¶ 8(e). The parties agree that the Defendant's conduct renders her ineligible for relief under the safety valve provision set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and ineligible for a 2-level reduction under U.S.S.G. § 4C1.1, which went into effect on November 1, 2023. *Id.* ¶ 8(f).

As the Defendant has demonstrated acceptance of responsibility, the Government agrees that a **two-level** reduction would be appropriate, pursuant to § 3E1.1(a) of the Guidelines. *Id.* ¶ 6. Furthermore, the Government agrees that an additional **one-level** reduction is appropriate, pursuant to § 3E1.1(b), because the Defendant has assisted authorities by providing timely notice

of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. *Id.*

On February 22, 2024, the United States Probation Office issued its final PSR and Sentencing Recommendation in this case. The United States Probation Office agreed with the parties' determinations regarding the base offense level and applicable enhancements and adjustments. PSR ¶¶ 26-26l. The United States Probation Office determined that the Defendant's adjusted offense level is 45 but treated as 43[2], she is in Criminal History Category I, and the advisory Guidelines sentencing range is life imprisonment, with a statutory minimum of 10 years' imprisonment. PSR ¶¶ 26m, 29, 61-62. The Government accepts the PSR's content; however, it objects to the Probation Office's recommended sentence of 360 months for the reasons stated below. *See* Sentencing Recommendation at 1.

Although the Defendant's Guidelines range is **life imprisonment**, the Government and Defendant jointly recommend a sentence **between 360 to 420 months' imprisonment**. ECF No. 71 at 4. Within this range, the Government respectfully requests the Court impose a sentence of **420 months' imprisonment**. As set forth in detail below, this sentence is proportional to the breadth and extent of the Defendant's crimes as a major narcotics trafficker. Her conspiracy to transport cocaine bound for the United States yielded, at a conservative estimate, 27 million dollars in profits, which was her primary source of income during the aforementioned time period. ECF No. 71-2 ¶ 8. To further her objective of transporting these illicit drugs, which totaled more than 27 tons of cocaine, the Defendant directly participated in and ordered violent acts, including murder. *Id.* ¶ 6. Such violence has deleterious effects on her home country of Guatemala and the broader region. It exacerbates both local and international fear of DTOs like the Defendant's

---

[2] Pursuant to the Guidelines Chapter 5, Part A (comment n.2), where the total offense level is calculated in excess of 43, the offense level is treated as level 43. PSR ¶ 26m.

among ordinary citizens, which allows them to continue operating and perpetuates the cycle of violence.

The Government acknowledges that this recommended sentence is a downward variance from the Sentencing Guidelines range of life imprisonment. Despite the severe nature of the Defendant's drug trafficking activities, such a downward variance is warranted. She notified the Government of her intention to agree to the Joint Sentencing Recommendation in a timely manner, permitting the Government to avoid preparing a contested sentencing, and permitting the Court to allocate its resources efficiently. By avoiding a contested sentencing, the Government was not required to disclose the identities of multiple cooperating defendants whose safety would have been at risk by virtue of publicly disclosing their cooperation. A sentence of 420 months' imprisonment therefore takes the Defendant's plea into account, while remaining at the upper end of the jointly recommended range to reflect the seriousness of the offense.

The Government includes its analysis of the sentencing considerations under 18 U.S.C. § 3553(a), which underlies its recommended sentence, in detail below. The parties understand that this recommendation is not binding on the Court. The Defendant further understands that the United States may recommend a sentence at the top of the range. ECF No. 71. at 4. If the Defendant commits any conduct after the date of the filing of the Joint Motion of Supplemental Colloquy and Joint Sentencing Recommendation that constitutes a failure to accept responsibility under Section 3E1.1 of the Sentencing Guidelines (examples of which include but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct, and false statements to any law enforcement agent, probation officer or Court), the Government is free to seek a sentence above the recommended range. *Id.*

## V.    SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)

After calculating the advisory Guidelines range, a District Court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable."  *Gall v. United States,* 552 U.S. 38, 49-50 (2007).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    A.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B.    to afford adequate deterrence to criminal conduct;

    C.    to protect the public from further crimes of the defendant; and

    D.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

A court should also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.   Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful

study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.    To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### A.    Nature and Circumstances of the Offense

As described above, the Defendant's conviction arises out of her participation in a drug trafficking organization that arranged for the transportation of massive quantities of cocaine on numerous occasions from Guatemala to Mexico for its ultimate importation into the United States. ECF No. 71-2 ¶¶ 2, 7, 9.    The nature and circumstances of her crime thus weigh toward a substantial term of incarceration.

The Defendant committed a serious crime against the United States, having admitted to conspiring to distribute 450 kilograms or more of cocaine to the United States.    *Id.* ¶ 7.  Without hesitation or trepidation, she brokered many large-scale cocaine transactions, collecting tens of millions of U.S. dollars in drug proceeds and distributing portions of those proceeds to co-conspirators.    *Id.* ¶ 2.    Furthermore, the Defendant admitted to knowing that most of the cocaine was destined for the United States to be illegally imported and distributed.    *Id.* ¶ 9.

The Defendant coordinated and directed the drug shipments, overseeing co-conspirators and members of her DTO.    *Id.* ¶ 2(b)-(c).    She coordinated and directed the transportation of cocaine shipments via vehicles to properties owned and/or utilized by the Defendant and/or her DTO in Guatemala and elsewhere.    *Id.* ¶ 2(b). The Defendant admitted that violence was an integral part of the conspiracy, and directly participated in violent acts and ordered murders to further her and her DTO's drug-trafficking activities.    *Id.* ¶ 6.    She used and/or brandished firearms, as did other individuals under her control, in furtherance of her drug-trafficking acts.    *Id.*    Violence

undertaken by the Defendant and her DTO had and continues to have a deleterious effect on the Defendant's own community and contributes to the rampant corruption in her home country that allows these organizations to continue operating. Her actions directly perpetuated a cycle of violence and destruction caused by narcotics trafficking, the effects of which travel to the United States, destabilizing border relations and domestic crime. Cocaine is generally not made in the United States, but its importation also leads to violence affecting Americans, even within their own borders.

The quantity of cocaine trafficked further underscores the seriousness of the offense. The Defendant admitted to trafficking more than 27 tons of cocaine, which is an extremely dangerous and destructive illegal street drug. *Id.* ¶ 7. Society incurs enormous costs in dealing with the effects of these illegal narcotics, including the costs associated with law enforcement efforts, as well as burdens on the healthcare system. Any sentence imposed must reflect the seriousness of this criminal conduct. The Government respectfully submits, based on the circumstances of the instant case and the Defendant's role in this cocaine distribution conspiracy, that a sentence of 420 months takes into consideration the nature and circumstances of the conspiracy, including the use of violence in furtherance of the conspiracy, and the type and quantity of drugs to be distributed. Such a sentence will reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Generally, the type of conduct in which the Defendant engaged has a detrimental effect on Guatemala, Mexico, the United States, and other countries. Drug trafficking and related corruption have destroyed families and communities in the Defendant's home country of Guatemala, have resulted in the loss of countless economic opportunities, and have eroded national security. In the United States, trafficked cocaine leads to and furthers drug addiction, devastating Americans in the process. The seriousness of this offense demands a proportional

sentence of imprisonment.

**B.    The History and Characteristics of the Defendant**

As set forth in the PSR, the Defendant has no known criminal convictions.  PSR ¶¶ 27-33.

The Defendant is a 47-year-old citizen of Guatemala.  She enjoyed a stable upbringing and a happy

childhood.  *Id.* ¶ 37.  She reported that her home was a "place where my parents loved me," and

she was well-provided for financially.  *Id.*  The Defendant noted that her parents provided her with

"a lot of educational guidance" as well as instilling good principles and values in her and her

siblings.  *Id.*  The Defendant completed the equivalent of a high school degree.  PSR ¶ 51.  She

reported close familial ties and denied instances of physical abuse, neglect, and substance abuse

within the family.  PSR ¶ 37.  The Defendant has three living children of her own and noted that

she lost one child in January 2022.  PSR ¶¶ 38-42.  She also owns a plot of land in Zacapa,

Guatemala, which she inherited from her father.  PSR ¶ 58.

However, it is known that the Defendant's family was involved in the narcotics trade.  The

Defendant's father, Waldemar Lorenzana-Lima, was a major drug trafficker, convicted in this

Court and sentenced in March 2020.  Criminal No. 03-331-11 (CKK).  Her brothers, Waldemar

Lorenzana-Cordon and Eliu Elixander Lorenzana-Cordon, were also convicted of drug trafficking

in this Court, sentenced in May 2018 and February 2018, respectively, after being tried jointly.

Criminal Nos. 03-331-14 (CKK); 03-331-13 (CKK).

Based on her own account from the presentence investigation interview, the Defendant

enjoyed a stable upbringing and has resources in Guatemala.  Although her father and brothers

were known drug traffickers, the Defendant made a conscious choice to similarly join the family

drug trafficking business.   As evidenced by her criminal conduct, the Defendant clearly profited

from her participation in these narcotics trafficking ventures.  After serving a significant prison

sentence, the Government hopes that she will utilize her resources to pursue legitimate sources of

income in her home country.

**C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

Congress has gone to great lengths to send the message to drug traffickers that the United States will not tolerate the importation and trafficking of illicit drugs in the United States.   This message was first codified in the Comprehensive Drug Abuse Prevention and Control Act of 1970. *See* 84 Stat. 1236.   Title III of the 1970 Act—referred to as the Controlled Substances Import and Export Act of 1970—adopted strict regulatory requirements for importation and exportation of controlled substances.   *See* 84 Stat. 1289, codified at 21 U.S.C. §§ 951-971.   It also criminalized the manufacture and distribution of a controlled substance "intending" or "knowing" that the controlled substance would be unlawfully imported into the United States.   Pub. L. No. 91-513, Title III, § 1009 (Oct. 27, 1970), codified at 21 U.S.C. § 959.   Here, Congress sought to eradicate the international drug trade insofar as the illicit substances were bound for the United States.

The Defendant was an integral member of a conspiracy that involved tonnage quantities of cocaine trafficked throughout South and Central America.   She coordinated and directed the transportation of cocaine shipments, using a method of distribution that falls squarely into a category of conduct that Congress prohibited.  Although the Government and the Defendant agreed to jointly recommend a range between 360 and 420 months, the Government respectfully requests that the Court impose a sentence toward the upper end of this range.  A sentence of 420 months is still significantly below the Defendant's Guidelines range of life imprisonment at a Criminal History Category I and an adjusted offense level of 45.   In recommending a sentence below life imprisonment, the Government has taken into consideration that the Defendant has demonstrated acceptance of responsibility through her allocution and the signing of the Joint Supplemental Statement of Stipulated Facts.

At the same time, a sentence of 420 months reflects the seriousness of the offense and will promote respect for the law.   The Defendant agreed that violence was a key component of the conspiracy, that she directly participated in violent acts herself, and that she used and/or brandished firearms.  ECF No. 72 ¶ 6.

A lesser sentence would suggest to the public, in general, and other drug traffickers, specifically, that attempts to distribute large quantities of controlled substances are not taken seriously—even when aggravating factors such as violence, firearms, and private aircraft are involved.   In this way, a lesser sentence could encourage similar conduct.  *See Gall,* 552 U.S. at 54 (2007) (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

### D.    The Need for the Sentence to Afford Adequate Deterrence

A sentence affording adequate deterrence will (1) generally deter similar offenses and (2) protect the public from further crimes by this specific Defendant.  18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

#### *(1)    General Deterrence*

The sentence imposed should "afford adequate deterrence to criminal conduct" by others. 18 U.S.C. 3553(a)(2)(B).   Given the adverse impact that drug trafficking has on society and the serious detrimental effects of cocaine in communities, it is especially important that the Court impose a sentence that discourages others from such conduct.  While this prosecution disrupted some of the narcotics trafficking from Central America to the United States, a vast amount of trafficking continues.   Applying the upper range of this jointly recommended sentence would critically deter other narcotics traffickers involved in transporting illicit drugs via Central America by demonstrating that such activities will lead to prosecution and significant sentences.   In this case, a sentence proportional to the severity of the Defendant's crimes will send a clear message

to other similarly situated players in the drug trafficking world: that punishment for such conduct is certain.  The narcotics trafficking world is highly interconnected, and it is imperative to convey to other participants in the international drug trade that importing cocaine and other illegal substances to the United States poses grave consequences.

### (2)    Specific Deterrence: Protecting the Public from Further Crimes of the Defendant

For over a decade, the Defendant made her living from trafficking cocaine.  As noted above, her conduct not only affected the United States, but also the communities of Guatemala, Mexico, and other countries.  The Defendant's role was not ancillary; she led her DTO's efforts in Guatemala, providing crucial transit in Guatemala and elsewhere.  ECF No. 72 ¶ 2.  While the recidivism rate among former drug traffickers remains a concern, the Government's recommended sentence of 420 months reduces the likelihood of recidivism, especially given the Defendant's age of 47 years.  Given this fact, the Defendant will likely be in her seventies upon her release from incarceration, the Government believes that she is unlikely to return to criminal activity.  Age and criminal history exert a strong influence on recidivism.  For offenders in Criminal History Category I, the rearrest rate ranged from 53.0 percent for offenders younger than age 30 at the time of release to 11.3 percent for offenders aged 60 or older.[3]  Overall, the Government believes that a sentence of 420 months is appropriate to protect the public from future crimes of the Defendant.  See 18 U.S.C. § 3553(a)(2)(C).

### E.    Unwarranted Sentencing Disparities

Lastly, because of "the need to avoid unwarranted sentencing disparities," 18 U.S.C. § 3553(a)(6) requires an evaluation of the Defendant's conduct compared to Defendants with similar records who have been found guilty of similar conduct.  When determining whether a sentence

---

[3] United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, at 3 (4th ed. Dec. 2017).

creates an unwarranted disparity, the Court should also consider a Defendant's acceptance of responsibility, the nature and extent of a Defendant's participation in the criminal activity, a Defendant's criminal history, and whether and to what extent a Defendant cooperated. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-Defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted). A Defendant is only entitled to "a weighing of the § 3553(a) factors that are relevant to [her] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

The Defendant in the instant case played a crucial role in this DTO. She led its operations and is herself directly accountable for tonnage quantities of trafficked cocaine, using violence to further the conspiracy's objective of transporting drugs bound for the United States. ECF No. 72 ¶ 7. To date, several of the Defendant's co-conspirators have been charged and sentenced. An analysis of their conduct and resulting sentences follows. Defendant 5, discussed below, was not part of the same DTO but is included as a similarly situated defendant. Notably, the circumstances surrounding each Defendant's conduct are unique and may not provide precise comparators.

    i.    <u>Waldemar Lorenzana-Cordon; Eliu Elixander Lorenzana-Cordon</u>

Waldemar Lorenzana-Cordon and Eliu Elixander Lorenzana-Cordon ("Defendants 1 and 2"), who are the Defendant's brothers, distributed thousands of kilograms of cocaine from South American sources of supply between Mach 1996 and November 2009. Their organization used violence, corruption, and intimidation in furtherance of their drug trafficking activities. As leaders of the DTO, Defendants 1 and 2 were each personally responsible for several subordinate members and engaged directly with Colombian suppliers and Mexican buyers of cocaine. The brothers' sentencing determinations were therefore nearly identical: the Guidelines range for each Defendant was life imprisonment, based on an Adjusted Offense Level of 46. Several enhancements were

applied to the base offense level of 38 for the use of private aircraft; for their roles as organizers or leaders of a criminal activity involving five or more participants; and for their possession of a dangerous weapons in furtherance of their narcotics trafficking operations.  Defendants 1 and 2 did not accept responsibility nor cooperate with the Government and were tried jointly and convicted by a jury before this Court in March 2016.  Defendants 1 and 2 were sentenced to life imprisonment in May 2018 and February 2018, respectively, by this Court.  Criminal Nos. 03-331-14 (CKK); 03-331-13 (CKK).

      ii.    <u>Waldemar Lorenzana Lima</u>

Waldemar Lorenzana Lima ("Defendant 3"), who was the Defendant's father, led a DTO and conspired to distribute large quantities of cocaine between March 1996 and November 2007. During this time, he was directly accountable for the movement of over 450 kilograms of cocaine pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1).  Defendant 3 held a managerial or supervisory role in the offense, including providing direction and instruction to other members of the conspiracy, such as his sons.  His organization used aircraft to transport cocaine loads from Colombia to Guatemala.  The cocaine-laden aircraft would land on clandestine airstrips located on or near properties owned and utilized by the DTO, including the Defendant.

Defendant 3's sentencing range was 324 to 405 months.  At a Criminal History Category I, two levels were added to the base offense level of 38 for the use of private aircraft pursuant to § 2D1.1(b)(2)(A).  Another four levels were added for his role in managing the DTO and supervising its affairs.  U.S.S.G. § 3B1.1(a).  A three-level offense reduction was applied for acceptance of responsibility, pursuant to § 3E1.1(a) and (b), allowing the Government and the Court to avoid a protracted trial.  In March 2020, Defendant 3 was sentenced to 324 months' imprisonment, the lower end of the range for his Adjusted Offense Level of 41.  Criminal No. 03-331-11 (CKK)

iii.    <u>Defendant 4</u>

Defendant 4[4] was a member and eventual leader of a DTO that conspired to transport multi-ton quantities of cocaine, and was responsible for coordinating, overseeing, and supervising the safe transportation of cocaine shipments through Guatemala, coordinating cocaine deliveries arriving in Guatemala, and receiving and distributing payments for the shipments.  As time progressed, Defendant 4 gained additional responsibility and oversight, eventually ascending to lead his own DTO.  Violence and corruption were integral to the conspiracy, and he directly participated in and ordered numerous violent acts, including murders and kidnappings.  Defendant 4 bribed political and law enforcement officials in furtherance of his drug trafficking enterprise.  He/she also used and/or brandished firearms, including machine guns, and possessed these firearms, including destructive devices like rocket-propelled grenades, in furtherance of his DTO's objectives.

At a Criminal History Category I and an Adjusted Offense Level of 43, Defendant 4's sentencing range was life imprisonment.  Two levels were added to the base offense level of 38 for the use of violence, pursuant to § 2D1.1(b)(2).  Two additional levels were added for the bribery of law enforcement.  U.S.S.G. § 2D1.1(b)(11).  Another four levels were added for his/her role in managing the DTO and supervising its affairs.  U.S.S.G. § 3B1.1(a).  Although Defendant 4 was eligible for a two-level increase for possessing a firearm, § 2D1.1(b)(1) was not applied because he/she pleaded guilty to one count of 18 U.S.C. § 924(c)(1)(B)(ii).  Upon his/her arrival to the United States, Defendant 4 cooperated fully with the Government—he/she accepted responsibility and assisted authorities in the investigation and prosecution of his own misconduct, leading to a three-level decrease pursuant to U.S.S.G. § 3E1.1.  Furthermore, Defendant 4 provided substantial assistance to the Government in its investigation and prosecution of individuals and DTOs in

---

[4] The identity of Defendant 4 is anonymized herein because Defendant 4 has cooperated in other cases and his/her cooperation is not otherwise known to the public.  Upon request, the Government will provide the Court with Defendant 4's name and case number in an *ex parte, sealed* filing.

Central America, which advanced Government efforts.  Based on this substantial assistance, the Government requested a sentence of 216 months, a downward departure from the recommended range.  Defendant 4 was sentenced to 186 months' imprisonment.

The Government acknowledges the disparity between its recommendation of 420 months' imprisonment for the Defendant and its recommendation of 216 months' imprisonment for Defendant 4.  The Government acknowledges the fact that the Defendant demonstrated acceptance of responsibility through her allocution and signing of incorporated Joint Supplemental Statement of Stipulated Facts prior to the imposition of sentence and provided timely notice of her intention to enter a Joint Sentencing Recommendation, thereby permitting the Government to avoid preparing for a contested sentencing and permitting the Court to utilize its resources efficiently. However, unlike Defendant 4, the Defendant in the instant case did not provide substantial assistance to the Government despite having ample opportunity to do so.  As such, the Defendant is not entitled to the same or even remotely comparable level of consideration offered to Defendant 4.

     iv.   <u>Gerardo Gonzalez-Valencia</u>

Gerardo Gonzalez-Valencia ("Defendant 5") was a leader within the Los Cuinis DTO and conspired to distribute large quantities of cocaine for importation into the United States and Europe between 2003 and April 2016, and enlisted others to carry out acts of violence and risk their lives for his personal gain and in furtherance of the DTO.  During this time, he was directly accountable for the movement of over 450 kilograms of cocaine pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1). On December 22, 2022, Defendant 5 pleaded guilty to conspiracy to distribute five kilograms or more of cocaine knowing and intending that such substance would be unlawfully imported into the United States.  In pleading guilty absent a plea agreement, Defendant 5 submitted a barebones Statement of Facts.

Defendant 5's Criminal History Category was III with a base offense level of 38 under § 2D1.1(c)(1).  Two levels were added for the possession of a firearm under § 2D1.1(b)(1).  Two offense levels were added because Defendant 5 used violence, made a credible threat to use violence, or directed the use of violence under § 2D1.1(b)(2).  Four offense levels were added for Defendant 5's role as a leader or organizer under § 3B1.1(a).  An additional two offense levels were added under § 2D1.1(b)(3)(B) because Defendant 5 unlawfully imported or exported a controlled substance under circumstances in which a submersible vessel or semi-submersible vessel was used.  Three offense levels were subtracted under § 3E1.1 because Defendant 5 timely notified authorities of his intention to enter a plea of guilty.  Defendant 5's adjusted offense level was 45, and his Guidelines sentence range was life imprisonment.

A contested hearing was conducted and in July 2023, and Defendant 5 was sentenced to life imprisonment.  Criminal No. 16-cr-065 (BAH).

## VI.    CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose a sentence of imprisonment of 420 months.  The Government submits that this sentence is sufficient, but not greater than necessary, to punish the Defendant for her crime, promote respect for the law, deter the Defendant and others from committing serious crimes in the future, and protect the public.

Dated: February 26, 2024.

<div style="margin-left: 40%;">

Respectfully submitted,
MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice


By:    */s/ Imani D. Hutty*
Imani D. Hutty
Douglas Meisel
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C.  20530
Telephone: (202) 598-2281

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing pleading was served to counsel of record for the Defendant via ECF on the 26th day of February 2024.

*/s/ Imani D. Hutty*
Imani D. Hutty
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C.  20530